UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES MATTHEW MENARD,

       Petitioner,

v.                       Case No:  2:16-cv-854-FtM-29NPM

FLORIDA ATTORNEY GENERAL and
SECRETARY, DOC,

       Respondents.

_____

## OPINION AND ORDER

Petitioner James Matthew Menard (petitioner or Menard), represented by counsel, filed a 28 U.S.C. § 2254 Petition for Habeas Corpus on November 30, 2016. Doc. #1, Petition. Menard, a Florida prisoner, challenges his convictions and sentences for aggravated battery with a deadly weapon, trespass of property, and third degree felony murder entered by the Twentieth Judicial Circuit Court in and for Collier County in Case No. 10-000045-CF. Id. at 1. The Petition raises seven grounds for relief. Id. at 5-14. Menard filed a Memorandum of Law (Doc. #4, Memorandum) and exhibits (Docs. 6-9) to support his Petition. In his Memorandum, Menard requests to withdraw Grounds Five and Seven of the Petition. Doc. #4 at 36. The Court construes the Memorandum as incorporating a motion to voluntary dismiss Grounds Five and Seven, which will be granted.

Respondent filed a Response to the Petition on August 14, 2017. Doc. #16, Response.  Respondent also filed exhibits, including the pretrial motion to dismiss, the stand your ground hearing transcript, and the trial transcript. Doc. #18.  Although afforded the opportunity (Doc. #20), Menard elected not to file a reply.

## I. Timeliness and Evidentiary Hearing

Respondent concedes the Petition is timely filed. Doc. #16 at 7.  The Court agrees.

Menard asks for an evidentiary hearing as to some of the grounds he raises.  A federal court "must limit its review under § 2254(d) to the state court's record." Brannon v. Sec'y, Fla. Dep't of Corr., No. 19-13757, 2020 WL 2188675, at *5 (11th Cir. May 6, 2020)(finding district court erred in granting evidentiary hearing and considering evidence not before the state court). "An evidentiary hearing is unnecessary unless it would "enable [a postconviction petitioner] to prove the petition's factual allegations, which, if true, would entitle [him] to federal habeas relief." Samuels v. Sec'y, Dep't of Corr., No. 19-13445, 2020 WL 2097260, at *1 (11th Cir. May 1, 2020)(quoting Crowe v. Hall, 490 F.3d 840, 847 (11th Cir. 2007)). "[T]he burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016)(citations omitted), cert. denied, __ U.S. __, 137 S. Ct. 2245 (2017).

Conclusory allegations will not suffice.  Instead, petitioner must proffer specific facts and evidence, which if true, would prove an entitlement to relief.  Id. at 1319.

Menard has set forth no specific facts or evidence which warrant an evidentiary hearing.  The Court finds an evidentiary hearing is not warranted because the material facts are developed in the record.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007)(if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court need not hold an evidentiary hearing); see also Jones, 834 F.3d at 1318-19. Menard has not demonstrated he is entitled to an evidentiary hearing, 28 U.S.C. § 2254(e)(2), and therefore his request for an evidentiary hearing is denied.

## II. Factual and Procedural Background

The State of Florida charged Menard with six felony offenses: (1) second degree murder with a firearm of Jake Couture, (2) attempted second degree murder for discharging a firearm and causing great bodily injury to Michael Fleitas, (3) attempted second degree murder for discharging a firearm and causing great bodily harm to Brandon Standifer, (4) armed trespass of the Brittany Bay apartment complex, (5) armed trespass of the property of Brandon Morales or Dallas Hubbard, and (6) third degree felony

murder of Jake Couture occurring due to armed trespass. (Ex. 1:95-97,[1] Third Amended Information).

**Trial Court Proceedings**

Menard filed a pretrial motion to dismiss the charges under Florida Statute section 776.013,[2] asserting he was immune from criminal prosecution because his use of deadly force was justified. (Ex. 1:49-50).  The state court held an evidentiary hearing on the motion. (Ex. 2, Hearing Transcript).  Menard did not testify at the hearing. The Court accepts the summary of the evidence adduced at the hearing as set forth in Menard's initial brief on direct appeal, in which the State concurred. (Ex. 5)[3].

<u>Facts and Evidence Adduced at Hearing</u>

> At the hearing, Carlos Nazco testified that Mr. Menard had been living with his family for about two to three months. According to Mr. Nazco, on the night in question, he and Mr. Menard had plans to visit Mr. Nazco's sister, Nattie Montes, who lived in the Brittany Bay Apartment complex.  Mr. Nazco testified that he and Mr. Menard often stopped by her apartment without calling in advance.  Mr. Nazco further testified that Ms. Montes had no problem with their custom and that they had visited her in this manner on four or five occasions prior to the night in question. Mr. Nazco attempted to call Ms. Montes prior to departing, but she did not answer the phone. Nevertheless, in keeping with their custom, Mr. Menard and M. Nazco proceeded to Brittany Bay apartments to visit her. Two other individuals, Philip Markle and Jacob Markham, accompanied them on

---

[1] The Court will refer to paper exhibits filed by Respondent on August 18, 2017 (Doc. #18) as "Ex _."

[2] This statute is commonly known as "Stand Your Ground."

[3] The Court omits the internal citations to the hearing transcript and footnotes.

this trip.   The Brittany Bay Apartment complex has a gate around its perimeter.   Rather than attempting to use the keypad to call a resident to gain access, Mr. Menard entered the complex through the exit gate, which opened after another vehicle departed the complex.

Mr. Nazco testified that on the way to Ms. Montes's apartment the group decided to stop at another Brittany Bay apartment.   Mr. Menard parked in front of one of the apartment buildings whereupon the passengers, with the exception of Mr. Nazco, exited the vehicle.   There is some disagreement about what happened next. According to one witness, Korenzo Smith, a group of males, including Mr. Menard, knocked on the apartment door of Brandon Morales.   A neighbor, Dallas Hubbard, testified that Menard and another "little boy" approached "one of my friends and said do you know who Brandon Morales is." However, according to Mr. Nazco, Mr. Menard, Mr. Markham and Mr. Markle did not approach anyone or knock on any apartment doors but simply stood in front of Mr. Menard's truck talking.

At some point after their arrival, a white Mercedes pulled into the parking lot carrying Brandon Standifer, Brandon Morales, Jake Couture, and Michael Fleitas.   Mr. Nazco stated that the people who exited the Mercedes began arguing with Mr. Menard after they got out of the car, "screaming stuff back and forth."   Mr. Nazco testified that during the argument a "short dark-skinned guy," who was later identified as Brandon Standifer, was "screaming go get the fire, fire" to one of his cohorts. According to Mr. Nazco, "some tall kid with a big Afro, I guess he went to go get it and he came out with a gun or whatever" and was then "standing on the sidewalk" less than ten feet from Mr. Menard.   The individual with an Afro was later identified as Brandon Morales.   Mr. Nazco described the gun as "an Uzi-type thing" that was "[a]ll black."   Another witness, Dallas Hubbard, who lived next door to Morales, corroborated Mr. Nazco's testimony regarding the gun held by Mr. Morales, stating that it "looked like an Uzi or something like that."

The evidence ultimately revealed that the item was not a gun at all but was a replica of an Uzi that shot BB pellets.   However, unlike other toy guns, which have an orange or red tip to allow for identification as toys, this replica Uzi had its safety markings removed.   When

asked what Morales was doing with the replica Uzi, Hubbard stated that he was "trying to act like a bad-ass. . . ."

All of the witnesses testified that a physical altercation ensued between Mr. Standifer and Mr. Menard, with Mr. Standifer acting as the aggressor.  Mr. Nazco testified that after the individuals were "screaming stuff back and forth." He further testified that Mr. Standifer took off his shirt and then pushed Mr. Menard. Ms. Hubbard likewise testified that Mr. Standifer was "very aggressive" toward Mr. Menard and "pushed him to where he almost fell."  Another witness, Joleen Pelletier, who observed the events from her window, also confirmed that the white male, Mr. Menard, did not lay hands on anyone and was pushed by a black male, Mr. Standifer, who had taken his shirt off in anticipation of a fight.  No witness testified that Menard was the aggressor.  Directly after stumbling as a result of Mr. Standifer's push, Mr. Menard pulled a gun from his pocket and fired a series of shots while moving sideways toward his pickup.  One bullet hit Mr. Standifer in the chest; another hit Mr. Fleitas in his buttocks.  Both lived. Another third bullet hit Jake Couture in the back and killed him.

Defense counsel argued at the hearing on the motion to dismiss that Mr. Menard was immune from prosecution under Section 776.013 and Section 776.032 of the Florida Statutes.  Specifically, Mr. Menard claimed he had a standing invitation to visit Ms. Montes at the Brittany Bay apartment complex and had the legal right to stand his ground and use deadly force in defending himself from the threat he perceived from Mr. Standifer and replica Uzi brandished by Mr. Morales.

The court orally denied the motion.  The judge opined that Mr. Menard did not have a "legal right to be where he was."  The judge additionally ruled that Mr. Menard was the aggressor because he failed to leave the apartment complex when asked.  With respect to the threat perceived by Mr. Menard, the state trial court stated that "the only force used against him was a push," which it found insufficient to "lead a reasonable person to believe that there was imminent danger to himself or to another."

- 6 -

The judge refused to consider the replica Uzi in determining whether Menard used force justifiable under Florida law:

> . . . the evidence wasn't that the gun was pointed at anybody other than that it was present and it may have been seen by someone. But I haven't heard any testimony to indicate that the defendant in this particular case was aware of the firearm.  What we have is an individual who is in front of him, who is shirtless, who appears to be unarmed who pushes him and then immediately, depending on who you listen to: miss - - Ms. Pelletier indicated it was instantaneous; Mr. Zarco (sic) said he pushed and he fired; Mr. Smith said he pushed and the guy started the guy started shooting.  That was more of a reaction than it was an indication that anybody had an imminent fear.  It was - - there was - - the force was in excess of what was presented. . . . Again, he was faced with an individual who was shirtless and unarmed.  The push, I don't think - - or I find it certainly was not one that would place a reasonable person in imminent fear and I therefore find that the defendant hasn't met its burden by a preponderance of the evidence that the defendant was justified under these facts in the use of the deadly force.

(Doc. #18, Ex. 5.)

Based on the court's oral findings (Ex. 2 at 133-137), the state court issued a written order denying the motion to dismiss under Florida Statute Sections 776.013 and 776.032.[4] (Ex. 1:92A).

Menard proceeded to a jury trial held in January, 2012. (Ex. 3, Trial Transcript).  The testimony at trial was substantially

---

[4] Section 776.032(1) provides immunity from criminal prosecution for persons using force permitted in section 776.012, section 776.013, or section 776.031.

similar to that produced at the stand-your-ground hearing.   The
Court accepts the summary of the additional facts as set forth in
Menard's initial brief on direct appeal, in which the State
concurred. (Ex. 5)[5].

### Additional Facts and Evidence Adduced at Trial

With respect to the nature of the threat facing the
defendant, Mr. Standifer testified that he told Mr.
Menard and his friends, "Look, you got to get the F out
of here" and described the tactic of taking his shirt
off as a "bluff game" designed to "scare them to leave,
rather than staying" in the parking lot.  Mr. Standifer
explained the tactic on cross-examination:   "I was
bigger than I am at the time.  You understand what I'm
saying?  Normally, when I take off my shirt, everybody
is like, oh, he's big.  That's scary to most people."

Regarding the threat posed by the replica Uzi, Ms.
Hubbard testified that when she saw it on the night in
question and she believed it was a real gun.  She also
confirmed that the replica had an Uzi-like clip that
protruded from the bottom of the gun.  In addition, she
testified that Mr. Morales "was waving [the replica Uzi]
back and forth to where [she] could see it."  Ms. Hubbard
further testified that Mr. Morales "always acts like a
bad ass" and that he behaved in conformity with this
trait on the night in question.

Mr. Morales testified that he went to his closet to get
the replica Uzi, came back outside, and held the replica
Uzi by his side during the encounter "for protection."
In addition, when asked whether he intended that others
viewing the replica to perceive it as a real firearm,
Mr. Morales answered in the affirmative.  Mr. Morales
also confirmed that the replica Uzi has a clip that
stores BB pellets and stock apparatus that folded
outward to allow the replica to be positioned and shot
from the shoulder.

---

[5] The Court omits the internal citations to the trial
transcript and footnotes.

On the issue of the legality of Mr. Menard's presence in Brittany bay, the State introduced evidence that Brittany bay Apartment complex is broken up into three separate divisions, each with a separate access road and a separate entry gate. An individual can walk from one section to another. The apartment complex is owned and maintained by one corporation and the entirety of the complex is enclosed by a single fence around the perimeter of the property.

When asked why they did not proceed directly to the apartment of Ms. Montes, both Mr. Nazco and Mr. Menard explained that they planned on visiting her but the other two passengers, Mr. Markle and Mr. Markham, suggested that they visit the residents in the section where the incident occurred prior to doing so. Mr. Menard testified that he remained close to the truck while Mr. Markle and Mr. Markham knocked on the door of Mr. Morales' apartment.

With respect to his perception of the threat he faced, Mr. Menard testified that Mr. Standifer "rushed over" towards him. Mr. Menard stated that he told Mr. Standifer that he did not know him and that he did not want problems with him. Mr. Menard testified that Standifer then took several steps backward, took off his shirt, and yelled "get the fire." Though he did not immediately understand the import of Mr. Standifer's command, he noticed a weapon was pulled after his friend, Mr. Markham, "took off running across the parking lot." He recognized that the gun was not a handgun but was a semiautomatic weapon. Mr. Menard stated that Mr. Morales was "waving [the gun] around," threatening him with the gun, and pointing at him.

Mr. Menard testified that "it was pretty hectic. Everybody - - people were just saying, oh, we're going - - somebody was saying, we're going to kill these guys . . . we're going to mess these guys up." Mr. Menard averred that, with the weapon being pointed at him and Mr. Standifer aggressing towards him, he was scared for his life. He further testified that he intended to get away, but Mr. Standifer kept moving toward him while he recovered from being pushed and he feared Mr. Standifer might try to pin him down. As a consequence, when he recovered from being pushed nearly to the ground, with Mr. Standifer still moving towards him and the gun still

> pointed at him, Mr. Menard drew his weapon and opened fire, shooting first at Mr. Standifer and then at Mr. Morales.

(Doc. #18, Ex. 5.)

Defense counsel moved for judgment of acquittal on all counts at the close of the State's case and renewed the motion at the close of all evidence.  The state trial court denied these motions.

The jury returned the following verdicts:

- Count 1: guilty of the lesser included offense of manslaughter of Couture;

- Count 2: guilty of the lesser offense of aggravated battery of Fleitas;

- Count 3: not guilty;

- Count 4: guilty of armed trespass;

- Count 5: not guilty; and

- Count 6: guilty of third-degree felony murder of Couture.

(Ex. 1:155-59).   In due course the trial court struck the manslaughter conviction in Count 1 to avoid a double jeopardy violation in light of the conviction in Count 6.  The state court adjudicated Petitioner guilty of Counts 2, 4, and 6, and imposed the following sentences:

- Count 2:  30 years of imprisonment with a 25-year mandatory minimum;

- Count 4:  5 years of imprisonment, concurrent with Count 2; and

- Count 6:  life imprisonment, consecutive to Count 2.

(Ex. 1:171-86; Ex. 4:88-89).

### Direct Appeal

Menard timely filed a direct appeal. (Ex. 5).  Represented by counsel, Menard asserted three grounds for relief on direct appeal:

> (1) the trial court erred in denying Menard's motions for judgment of acquittal because the State failed to disprove Menard acted in self-defense;
>
> (2) the trial court erred in denying the motion to dismiss because Menard has a lawful right to be in the common area of the apartment complex and possessed reasonable belief he faced great bodily harm; and
>
> (3) the trial court should have granted Menard's motion for judgment of acquittal on trespassing and third degree murder charges because he had a lawful right to be in the apartment complex.

The State filed a brief in response. (Ex. 5).  The Second District Court of Appeal *per curiam* affirmed Menard's convictions and sentences. <u>Menard v. State</u>, 110 So. 3d 455 (Fla. 2d DCA 2013). (Ex. 6).

**Rule 3.80 Motion**

Represented by counsel, Menard filed a post-conviction motion under Florida Rule of Criminal Procedure 3.850, raising the following grounds:

> (1) the trial court imposed an illegal sentence when it struck the manslaughter verdict instead of the third-degree murder verdict,
>
> (2) trial counsel provided ineffective assistance by failing to argue in his motion to dismiss that Petitioner could have immunity under section 776.012, Florida Statutes,
>
> (3) trial counsel provided ineffective assistance by failing to present Menard's testimony at the hearing on the motion to dismiss,
>
> (4) trial counsel provided ineffective assistance by failing to call Phillip Markle and Jacob Markham to testify at the hearing on the motion to dismiss and at trial, and
>
> (5) trial counsel provided ineffective assistance by failing to present prior statements by Phillip Markle and Jacob Markham at the hearing on the motion to dismiss and at trial. (Ex. 7:1417-37).

Menard later filed a supplemental motion, which provided further argument but raised no new grounds for relief. (Ex. 7:3433-55).

Menard then moved to assert an additional ground for relief:

> (6) trial counsel provided ineffective assistance by failing to request a special jury instruction on justifiable use of deadly force.

(Ex. 7:3456-60).

The post-conviction court summarily denied grounds 1, 2, 4,

- 12 -

and 5, and denied grounds 3 and 6 after an evidentiary hearing. (Ex. 7:4858-72).  The Second District Court of Appeal *per curiam* affirmed the denial of Menard's Rule 3.850 motion in <u>Menard v. State</u>, 202 So. 3d 418 (Fla. 2d DCA 2016); (Ex. 9).

### State Habeas Petition

Represented by counsel, Menard filed a Petition Alleging Ineffective Assistance of Appellate Counsel with the District Court of Appeals, asserting that on direct appeal appellate counsel should have argued that the trial court erred by striking the manslaughter verdict instead of the third-degree murder verdict. (Ex. 10).  The State filed a Response. (Ex. 11).  The Second District Court of Appeal summarily denied the petition. <u>Menard v. State</u>, 206 So. 3d 706 (Fla. 2d DCA 2015).

### III. Applicable Habeas Law

### A.   AEDPA General Principles

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A). If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the

claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review.  Kernan v. Hinojosa, 136 S. Ct. 1603, 1604 (2016).

This deferential standard is set forth in § Section 2254(d), which provides:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—"
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and intentionally difficult to satisfy. Sexton v. Beaudreaux, 585 U.S. ___, 138 S. Ct. 2555, 2558 (2018); White v. Woodall, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision. White, 572 U.S. at 419.  Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly

established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406.) "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). See also Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1301 (11th Cir. 2019) ("To justify federal habeas relief, the state court's decision must be so lacking in justification that there was an error . . . beyond any possibility for fairminded

disagreement.")(internal quotation marks omitted).

When reviewing a claim under § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)). See also Morrow v. Warden, 886 F.3d 1138, 1146 (11th Cir. 2018) (the court must presume that the State court's determination of a factual issue is correct, and petitioner must rebut presumption by clear and convincing evidence).

As discussed earlier, for the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court.  An adjudication on the merits does not require that there be an opinion from the state court explaining the state court's reasoning. Harrington v. Richter, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  "The presumption may be overcome when there is reason to think some other explanation for the state

court's decision is more likely." Richter, 562 U.S. at 99-100. This presumption applies whether the state court fails to discuss all of the claims or discusses some claims but not others. Johnson v. Williams, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard. When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do."  Id. 138 S. Ct. at 1196.

> When, as here, there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories ... could have supported the state court's decision; and then it must ask whether

> it is possible fairminded jurists could
> disagree that those arguments or theories are
> inconsistent with the holding in a prior
> decision of this Court." Harrington v.
> Richter, 562 U.S. 86, 102, 131 S. Ct. 770, 178
> L. Ed. 2d 624 (2011). If such disagreement is
> possible, then the petitioner's claim must be
> denied. Ibid.

Sexton, 138 S. Ct. at 2558.

### B.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). See also Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012)(failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims which are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would have to present his claims to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999);

Murray v. Carrier, 477 U.S. 478 (1986).   To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  Murray v. Carrier, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).   "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

**C.     Ineffective Assistance of Trial and Appellate Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person may have relief claiming his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance

prejudiced the defense. Id.   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)). The Strickland standard applies to claims of ineffective assistance of appellate counsel. Corales-Carranza v. Sec'y, Fla. Dep't of Corr., 786 F. App'x 053, 957 (11th Cir. 2019); Smith v. Robbins, 528 U.S. 259, 285 (2000).   Appellate counsel need not raise every nonfrivolous claim on appeal. See Jones v. Barnes, 463 U.S. 745 (1983); see also Eagle v. Linahan, 279 F.3d 926, 940 (11th Cir. 2001)("[T]he Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues." (citations omitted)).   The Jones Court underscored the importance of sorting out weaker arguments for stronger ones.

> Most cases present only one, two, or three significant questions . . . . Usually, . . . if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention. The effect of adding weaker arguments will be to dilute the force of the stronger ones.

Jones v. Barnes, 463 U.S. at 752 (citations omitted).

The Court recognized it is possible to bring a Strickland claim based on appellate counsel's failure to raise a particular

claim, but demonstrating incompetence is difficult. Robbins, 528 U.S. at 288.  "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (citation omitted).  To demonstrate prejudice, the petitioner must demonstrate a reasonable probability that, but for his counsel's failure to brief the particular issue, petitioner would have prevailed on the issue on appeal. Id. at 285.  If petitioner demonstrates that the omitted claim would have had a reasonable probability of success on appeal, then appellate counsel's performance resulted in prejudice. Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991).

## IV.  Analysis

### A. Ground One:  Illegal sentence when trial court vacated the manslaughter verdict instead of the third-degree murder verdict.

Menard claims the trial court imposed an illegal sentence when it vacated the jury's manslaughter verdict instead of vacating the third-degree murder verdict. Doc. #1 at 5.  Respondent seeks dismissal of this ground as procedurally barred. Doc. #16 at 13-14.

### (1) Procedural Bar

Respondent correctly points out that Menard did not raise this claim on direct appeal in state court. See Ex. 5.  Instead, Menard raised a similar claim as ground one in his Rule 3.850 motion, in which he complained the state court improperly

determined which verdict to vacate under Florida law, citing to and arguing only Florida caselaw. (Ex. 7 at 1428-29.)  The post-conviction court found this claim was not cognizable in a Rule 3.850 proceeding, citing to Watts v. State, 82 So. 3d 1215, 1216 n. 1 (Fla. 2d DCA 2012) and Johnson v. State,539 So. 2d 206 (Fla. 1992). (Ex. 7:4535-36).   The post-conviction court further held "a Rule 3.850 motion cannot be used to provide a second appeal or an alternative to a direct appeal." (Id. citing Straight v. State, 488 So. 530 (Fla. 1986)).  The Florida appellate court per curiam affirmed the denial of the Rule 3.850 motion.

Federal review of a habeas petitioner's claim is barred if the last state court to examine the claim states explicitly that the claim is barred because the petitioner failed to follow state procedural rules, and that procedural bar provides an adequate and independent state ground for denying relief.

> A state court's procedural ruling constitutes an independent and adequate ground if: (1) the last state court to render a judgment in the case clearly and expressly states that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim; (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law; and (3) the state procedural rule is adequate, meaning it was not applied arbitrarily or in an unprecedented way.

Smith v. Warden, Macon State Prison, No. 18-13801, 2020 WL 615034, at *6 (11th Cir. Feb. 10, 2020); see also Caniff v. Moore, 269

F.3d 1245, 1247 (11th Cir. 2001)("[C]laims that have been held to be procedurally defaulted under state law cannot be addresses by federal courts.").

Here, the state court rejected Menard's claim because he had failed to assert it on direct appeal and had improperly sought review in a collateral Rule 3.850 motion.  This ruling was not intermixed with the merits of the claim, and Menard does not submit the state court's ruling was arbitrary.  Nor does Menard allege, yet alone show, cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default. Coleman v. Thompson, 501 U.S. at 750; Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).  Thus, the record establishes that Ground One is unexhausted and procedurally barred.

### (2) Double Jeopardy

In his Reply, Menard contends that the claim is not one of trial court error but is premised on the double jeopardy provision of the Fifth Amendment. See Ex. 7 at 4522, ¶ 1.  This is not the way the issue was presented in state court, since a double jeopardy claim may be raised for the first time in a Rule 3.850 motion. Gammage v. State, 277 So. 3d 735, 738-39 (Fla. 2d DCA 2019).  Even if phrased in terms of a violation of the double jeopardy clause, however, petitioner has shown no constitutional error.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be 'subject for the same offence to be twice

put in jeopardy of life or limb.'" Jones v. Thomas, 491 U.S. 376, 380 (1989) (quoting U.S. Const., amend. V). In addition, the Double Jeopardy Clause guarantees against "multiple punishments for the same offense." United States v. Bobb, 577 F.3d 1366, 1371 (11th Cir. 2009). In the context of multiple punishments, the purpose of double jeopardy is simply to ensure that the total punishment does not exceed that authorized by the legislature. Jones v. Thomas, 491 U.S. 376, 381 (1989)); Missouri v. Hunter, 459 U.S. 359, 366 (1983) ("[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").

Here, Florida law is clear that there cannot be multiple punishments for the killing of a single person. Houser v. State, 474 So. 2d 1193, 1197 (Fla. 1985)("Florida courts have repeatedly recognized that the legislature did not intend to punish a single homicide under two different statutes.") Thus, the trial court clearly had to vacate one of the jury verdicts. Florida law is also clear that vacating the verdict of the lesser is proper and does not violate double jeopardy.

Under the Fifth Amendment, where double jeopardy prohibits multiple punishment, "the only remedy consistent with the congressional intent is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions." Ball v. United States,

470 U.S. 856, 864 (1985).   Thus, under the Fifth Amendment the trial court has the discretionary authority to sentence a defendant on either count, regardless of which is a lesser offense.   Given the jury's verdict, there was no violation of Fifth Amendment double jeopardy by imposing sentence on the third-degree murder conviction and vacating the manslaughter verdict.   In the alternative, Ground One is denied as without merit.

**B. Ground Two:   Ineffective assistance of appellate counsel for failing to argue the trial court erred by vacating the manslaughter instead of the third-degree murder conviction.**

Menard claims appellate counsel was constitutionally ineffective when he failed to assert on direct appeal that the trial court erred by vacating the manslaughter verdict instead of the third-degree murder verdict. Doc. #1 at 7.   Menard argues that appellate counsel failed to raise this issue on direct appeal despite "this critical issue being flagged by the state trial court for appeal."   Doc. #4 at 25.   Menard submits that had this issue been raised on direct appeal, he would have prevailed and his conviction for third degree murder would have been vacated and he would have been convicted of manslaughter. Id.   Because Menard was sentenced to life on the third degree murder conviction and a conviction for manslaughter carries a maximum sentence of 30 years, Menard claims he suffered prejudice due to appellate counsel's deficiency. Id.

Menard raised this same ground in his state habeas petition. (Ex. 10). The State filed a response. (Ex. 11). The Second District Court of Appeal denied the petition without opinion. (Ex. 12).

Respondent first argues this ground is procedurally barred because Menard did not "invoke federal constitutional rights while asserting this claim." Doc. #16 at 15. The Court disagrees. Menard raised an ineffective assistance of appellate counsel claim to the Second District Court of Appeal citing to Strickland as the governing law. (Ex. 10 at 6). Thus, Menard did invoke a federal constitutional right. The Court finds that this ground is not procedurally barred, and so turns to the merits of the claim.

Both Menard's state petition (Ex. 10) and the State's response (Ex. 11) argued the application of Florida law when dual convictions violate double jeopardy. Both pleadings agreed that Florida law requires the lesser offense to be stricken. State v. Barton, 523 So. 2d 152, 153 (Fla. 1988). (See Ex. 10 at 7, Ex. 11 at 3). Both acknowledged under Florida law the lesser offense is determined by the elements of each offense. Pizzo v. State, 945 So. 2d 1203, 1206 (Fla. 2006). (See Ex. 10 at 8, Ex. 11 at 3).

At the time of Menard's conviction, manslaughter was defined as "[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification." § 782.07, Fla. Stat. (2010). The elements of manslaughter are (1)

death of the victim and (2) causation of the victim's death by the defendant through and intentional act, intentional procurement of an act, or culpable negligence. Fla. Std. Jury Instr. (Crim.) 7.7. Third degree felony murder is defined as "[t]he unlawful killing of human being, when perpetrated without any design to affect death, by a person engaged in the perpetration of, or in the attempt to perpetrate, an [unspecified felony]." § 782.04(4), Fla. Stat. (2010).  The elements of third degree felony murder are (1) death of the victim and (2) causation of the victim's death or accomplice during the commission, attempted commission, or escape from a commission or attempted commission of a felony, and (3) killing of the victim by the defendant or an accomplice. Fla. Std. Jury Instr. (Crim.) 7.7.

The State in its response pointed out the elements of the manslaughter offense were subsumed within the third degree murder offense.   Unlike the manslaughter offense, third degree murder required the additional element of the commission of a felony. Upon review of the parties' respective pleadings, the Second District Court of Appeal denied Menard's petition.  The appellate court's silent denial constitutes an "adjudication" for § 2254. Harrington, 562 U.S. 98-99.  Thus, the decision is entitled to deference under § 2254(d) because "the summary nature of a state court's decision does not lessen the deference that is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); see also

Richter, 562 U.S. at 99.  The appellate court's interpretation of Florida law binds this Court.  Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)(holding "state courts are the ultimate expositors of state law.").

Menard has not demonstrated that the state court's rejection of this ground was contrary to clearly established federal law nor based upon an unreasonable determination of the facts.  Ground Two is denied.  28 U.S.C. § 2254(d).

### C. Ground Three:  Ineffective assistance of counsel for failing to argue Menard was entitled to immunity under Florida Statute Section 776.012(1).

Menard claims trial counsel was ineffective because, while he pled immunity under Fla. Stat. § 776.013(3), he failed to also assert immunity under Fla. Stat. § 776.012(1). Doc. #1 at 8. Menard argues because his alleged trespassing would not have precluded him for being granted immunity under § 776.012(1), trial counsel was ineffective in failing to assert this alternative theory of immunity.  Id.

Respondent argues this ground is without merit and refuted by the record. Doc. #16 at 20-21.  Respondent asserts trial counsel did advance an argument under both § 776.013 and § 776.012, and the trial court considered and rejected both arguments.  Id.

Menard raised this ground as ground two in his Rule 3.850 motion. (Ex. 7 at 3447-48).  The post-conviction court summarily denied this claim, stating:

In Ground Two Defendant asserts that trial counsel was ineffective "when he failed to argue to the trial Court that Mr. Menard was entitled to immunity under Florida Statute 776.012(1)." Defendant further assets that "had trial counsel pursued the alternative theory of immunity available under section 776.012(1), Mr. Menard's alleged trespassing would not have precluded the trail court from granting immunity."

Initially, a review of the record reveals that during the hearing on Defendant's Motion to Dismiss, trial counsel did specifically cite § 776.012(1) both in his opening statement to the Court, and his closing argument to the Court. (Def. Mot. Dismiss. 6, 113-18).

Furthermore, a review of the record reveals that after the Court determined that immunity under § 776.013 did not apply because the Defendant was trespassing, it went on to consider whether the Defendant was entitled to immunity under § 776.012 regardless of trespassing. (Def. Mot. To Dismiss. 135). Despite trial counsel's efforts to urge the Court to grant immunity under § 776.012(1) and § 776.013, the Court ultimately found that the Defendant was not entitled to immunity because of § 776.041, Florida Statutes. (Def. Mot. To Dismiss. 135). Specifically, the Court found that Defendant was the party who initially provoked the sue of force under §§ 776.012(1), 776.013, 776.013, or 776.032. See § 776.041, Florida Statutes, see also Darling v. State, 81 So. 3d 574 (Fla. 3d DCA 2012)("justification for using deadly force in self defense, which includes the 'stand your ground' defense, does not apply to a person who provokes the attack.")(citing § 776.041(2), Florida Statutes)).

Therefore, the Court finds that Defendant's claim is refuted by the record because trial counsel specifically argued § 776.012(1) as a basis for immunity in this case. (Def. Mot. Dismiss, 6, 113-18). Furthermore, the Court finds that Defendant's claim is meritless as the Court's reliance on § 776.041 in denying the Defendant's Motion to Dismiss precluded any finding of immunity under the statute. Accordingly, ground Two is denied.

(Ex. 7 at 4868-69, ¶¶ 5-8).

Menard argues that the state court's ruling is unreasonable under Strickland and based on an unreasonable determination of the facts, given the evidence. Doc. #4 at 32.  Menard suggests that counsel "never argued" but only made "two insignificant references" to § 776.012. Id.  Menard also argues that the Court should review this ground *de novo* because the state court "never adjudicated the claim on the merits" or afforded Menard an evidentiary hearing on this ground. Id.

Menard's request for *de novo* review is unavailing. Florida's Second District Court of Appeal affirmed the post-conviction court's rejection of ground two. (Ex. 9).  The silent affirmance of the post-conviction court's ruling is entitled to deference. As discussed earlier, under a § 2254(d)(2) inquiry, the federal court "looks through" the Florida appellate court's *per curiam* summary denial and evaluates the state postconviction court's reasoned decision denying Petitioner relief. Wilson v. Sellers, __ U.S. __, 138 S. Ct. 1188, 1192 (2018).  The Court then presumes the unexplained affirmance adopted the same reasoning. Id.

Here the state court found the record refuted Menard's claim. A state court's findings of fact are presumed correct unless petitioner rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was 'too powerful to conclude

anything but [the petitioner's factual claim].'" <u>Landers v.</u>
<u>Warden, Atty. Gen. of Ala.</u>, 776 F.3d 1288, 1293–94 (11th Cir. 2015)
(citing <u>Miller-El v. Dretke</u> (<u>Miller-El II</u>), 545 U.S. 231, 265
(2005)).  When a finding of fact is challenged on federal habeas,
the standard of review is doubly deferential: "[t]he 'unreasonable
application' inquiry requires the state court decision to be more
than incorrect or erroneous; it must be objectively unreasonable."
<u>Chandler v. Crosby</u>, 454 F. Supp. 2d 1137, 1146 (M.D. Fla. 2006)
(citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75–77 (2003)).  But
"deference does not imply abandonment or abdication of judicial
review" and "does not by definition preclude relief." <u>Brumfiled</u>
<u>v. Cain</u>, __ U.S. __, 135 S. Ct. 2269, 2277 (2015) (quoting <u>Miller-</u>
<u>El v. Cockrell</u>, 537 U.S. 322, 340 (2003)).

The Court finds the record supports the state court's finding
that trial counsel advanced an argument that Menard could have
immunity under § 776.012(1) and the trial court considered but
rejected the argument.  Although the motion to dismiss did not
refer to § 776.012(1) (<u>see</u> Ex. 1 at 49–50), the transcript from
the hearing clearly reflects trial counsel asserted immunity under
both § 776.013(1) and § 776.012(1) at the hearing. (Ex. 2).  After
the State provided the court with a copy of § 776.013 at the
inception of the hearing, defense counsel submitted copies of  §
776.012(1) and § 776.032 to the court. (<u>Id.</u> at 203).  Trial counsel
further repeatedly argued throughout the hearing that Menard was

justified to use deadly force because he reasonably believed such force was necessary to prevent his imminent death or great bodily harm.  (See generally Ex. 2).  During his summation argument, defense counsel again specifically directed the court to § 776.012 and argued Menard "had a right to deploy deadly force because Mr. Standifer was physically attacking him while Mr. Morales had an Uzi pointed at him." (Id. at 318).

Denying the motion, the court first pointed out the evidence suggested Menard did not have a legal right to be at the Brittany Bay Apartments. (Id. at 332).  The court then considered whether Menard was justified to use reasonable force to protect himself believing he was imminent harm or great bodily injury.  Finding the only force used against Menard "was a push," the court determined the evidence was "insufficient" to "lead a reasonable person to believe that there was imminent danger to himself or another." (Id.).  Further, the court determined Menard was not entitled to immunity because he was aggressor. (Id.).

This ground fails under both prongs of Strickland.  Menard cannot demonstrate ineffective assistance of counsel because the record refutes Menard's claim that trial counsel did not argue immunity based on § 776.012.  And, Menard cannot demonstrate prejudice because the trial court specifically found Menard the aggressor, so he is not be entitled to immunity under § 776.012.  Menard has not demonstrated that state court's adjudication of

this claim was contrary to clearly established federal law nor based upon an unreasonable determination of the facts. Ground Three is denied. 28 U.S.C. § 2254(d).

### D. Ground Four: Ineffective assistance of counsel for advising Menard not to testify at the Stand Your Ground hearing.

Menard states he was willing and able to testify at the pretrial hearing held on his motion to dismiss but counsel advised him that his testimony was unnecessary. Doc. #1 at 10. Menard claim that, contrary to counsel's advice, his testimony was essential to establish he reasonably believed his use of force was necessary to prevent imminent death or great bodily harm to himself and suggests the outcome of the hearing would have been different had he testified. Id.

Menard raised this ground as ground three in his Rule 3.850 motion. (Ex. 7 at 3449-50). The post-conviction court granted Menard an evidentiary hearing on this ground. (Ex. 7 at 4537).

At the evidentiary hearing, defense counsel testified that he never told Menard it was "unnecessary for him to testify." Counsel stated that for strategic reasons he advised Menard not to testify at the motion to dismiss and Menard followed his advice. Defense counsel provided this advice because (1) he believed Menard's reasonable belief of fear could be established through the testimony of other witnesses, (2) testimony regarding unlawful activity that occurred before the shooting would have prevented

him from getting immunity, (3) testimony regarding Menard being
the provoker would have prevented him from getting immunity, and
(4) Menard, by testifying, would subject himself to being
impeached. Counsel also stated that the defense strategy may
change between the hearing and trial, and he was concerned Menard's
testimony at the hearing could undermine his anticipated
testimony. Menard did eventually testify at trial. Counsel
believed he could adequately prove the elements to show Menard was
justified in using deadly force through the three witnesses he
called at the hearing. In hindsight he admitted he questioned his
strategy, but at the time he believed it was the correct strategy.
Menard did not insist on testifying, and if Menard told counsel he
wanted to testify, counsel would have let him.

Menard testified at the post-trial hearing that he wanted to
testify at the motion hearing but followed counsel's advice not to
testify. Menard claims counsel told him "it wasn't necessary" for
him testify, and asserts he argued with counsel about testifying.

The post-conviction court denied this ground in a detailed
opinion:

> In Ground Three Defendant asserts that trial counsel
> "provided ineffective assistance of counsel when he
> advised Mr. Menard that it was not necessary for him to
> testify at the stand your ground hearing." Defendant
> further argues that "Mr. Menard's testimony was
> essential to establish that he reasonably believed that
> his use of force was necessary to prevent imminent death
> or great bodily harm to himself," and that "had Mr.
> Menard not been advised that his testimony was

unnecessary at the stand your ground hearing, he would have testified, as he did at trial."

At the evidentiary hearing, Defendant testified that he wanted to testify at the stand your ground hearing, but he was advised by trial counsel that his testimony was not necessary. Defendant stated that trial counsel advised him the three witnesses he presented at the hearing were sufficient. Defendant also testified that trial counsel was concerned with the upcoming trial, and was not very confident in the success of the motion. Defendant provided the testimony he would have given if he had testified at the stand your ground hearing. The testimony outlined his perception of the vents which took place on January 1, 2010.

On cross examination, Defendant was asked why his testimony differed at the evidentiary hearing compared to trial. Specifically, at trial Defendant testified that he originally went to the Brittany Bay apartments to see Nattie Montes, but stopped at a different apartment in Brittany bay so that the other occupants in his car "could hang out with some friends." (TT.990-93). However, at the evidentiary hearing, Defendant testified that he went to the Britany Bay apartments to confront the parents of an individual who robbed his friends earlier that day. The Defendant stated that the reason for the discrepancy was because he is currently under oath and swore to tell the truth. Defendant was then asked "didn't you swear to tell the truth when you testified at trial," and he replied, "no one else did."

At the evidentiary hearing, trial counsel testified that he researched the law, reviewed depositions, and weighed the probability of success in deciding whether or not to advise Defendant to testify at the stand your ground hearing. Trial counsel; testified he then discussed with the Defendant the risks associated with testifying as the stand your ground hearing, and that the Defendant agreed with his advice.

Trial counsel explained that the strategy for stand your ground hearing and trial was that the Defendant was invited to a party at the Brittany Bay apartments through a friend, and that he thought he had a legal right to be there. Trial counsel testified that his main concern was that if the Defendant testified as the stand your

ground hearing, and the defense strategy late changed, the Defendant's statements at the stand your ground hearing could be used against him at trial. Specifically, trial counsel testified that there were two potential state witnesses who if granted immunity by the State, would have testified that Defendant went to the Brittany Bay apartments to confront individuals involved in an alleged robbery. Trial counsel explained there was a genuine concern that the witnesses would become available after the stand your ground hearing, and would contradict Defendant's stand your ground testimony.

Trial counsel asserted that based upon the probability of success, and the potential state witnesses, he determined that strategically he should advise his client that it was not in his best interest to testify as the stand your ground hearing. However, trial counsel testified that if Defendant had wanted to testify, he would have allowed him. The Court finds that the testimony of the Defendant is not credible due to conflicting testimony at trial and the evidentiary hearing. The Court further finds the testimony of trial counsel credible, and that his decision to advise Defendant not to testify was strategic. Therefor, Defendant has failed to demonstrate an entitlement to the relief he requested, Accordingly, Ground Three is denied.

(Ex. 7 at 4860-62, ¶¶ 6-11).

The Second District Court of Appeal affirmed the post-conviction court's rejection of ground three. (Ex. 9). The silent affirmance of the post-conviction court's ruling is entitled to deference, and this Court "looks through" the appellate court's *per curiam* summary denial and presumes the unexplained affirmance adopted the state postconviction court's reasoned decision. Wilson, 138 S. Ct. at 1192.

A defendant's right to testify at a criminal proceeding is a fundamental and personal right that cannot be waived by defense counsel. See United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992).  In Teague, the Eleventh Circuit held that it is defense counsel's responsibility to advise the defendant of this right and the strategic implications and "that the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance [under Strickland]." Id. at 1534.  The Teague court reasoned that an attorney's performance would be deficient under the first prong of the Strickland test if counsel refused to accept the defendant's decision to testify and would not call him to the stand or if defense counsel never informed the defendant of the right to testify and that the ultimate decision belonged to the defendant. Id.  In Teague, the defendant's ineffective assistance of counsel claim was rejected because the trial court found that counsel had advised the defendant of his right to testify, had advised him he should not exercise that right, and the defendant did not protest. Teague, 953 F.2d at 1535.

Menard's Ground Four suffers from the same defect as the ineffective assistance claim in Teague; specifically, it fails because counsel informed Menard of his right to testify, advised him against doing so, and Menard accepted counsel's strategic advice.  Counsel's strategic choices were made after a thorough

investigation of both the law and facts.  Reasoned strategic choices by counsel are "virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690.

The post-conviction court's determination that counsel was more credible and had explained to Menard that he had a right to testify are factual determinations that Menard must rebut by clear and convincing evidence before he may have relief on this claim. <u>See</u> <u>Freund v. Butterworth</u>, 165 F.3d 839, 862 (11th Cir. 1999) (questions of credibility and demeanor of a witness is a question of fact); 28 U.S.C. § 2254(e)(1)(a determination of a factual issue made by a State court shall be presumed correct unless rebutted by clear and convincing evidence); <u>Gore v. Sec'y, Dep't of Corr.</u>, 492 F.3d 1273, 1300 (11th Cir. 2007) (recognizing that while a reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review).

Menard offers nothing to rebut the state court's factual finding that counsel was more credible or informed him of his right to testify.  In fact, Menard concedes counsel advised him that he could testify but recommended against him testifying.  Upon review of the hearing transcript, the Court concludes that reasonably competent counsel would have advised Menard against testifying under the circumstances.  Menard has not demonstrated counsel was constitutionally deficient.  The Court finds the state courts'

rejection of this claim was neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts.  Ground Four is denied.  28 U.S.C. § 2254(d).

Additionally, Menard's testimony at the hearing would have done no good.  Menard did testify at trial and was unable to establish a basis for a stand your ground defense.

### E. Ground Five:  Ineffective assistance of counsel for failing to call Phillip Markle and Jacob Markham as witnesses at the stand your ground hearing and trial.

Trial counsel did not call Phillip Markel and Jacob Markham as witnesses at the stand your ground hearing or at trial because he was told by their respective attorneys they would not testify and would plead the Fifth Amendment unless the prosecutor granted them immunity.  Doc. #1 at 12.  Trial counsel also advised Menard that the State threatened to pursue criminal charges against Markle and Markham if they testified.  Id.  Menard claims counsel should have called them as witnesses "to ask questions that would not lead them to make an incriminating response."  Id.

In his Memorandum, Menard acknowledges he "did not present this ground to the state appellate court" and acknowledges this "ground is not properly preserved for habeas review." Doc. #4 at 36.  Menard "respectfully withdraws Ground 5 from this Court's consideration."  Id.  Consequently, Ground Five is deemed voluntarily dismissed.

**F. Ground Six:  Ineffective assistance of counsel for failing to present Phillip Markle and Jacob Markham's prior statements against penal interest at the stand your ground heading and trial.**

Both Philip Markle and Jacob Markham, who were present during the shooting, provided written statements to law enforcement. Doc. #4 at 34.  Menard claims their statements supported his stand your ground defense and were admissible as an exception to hearsay under § 90.804(2)(c), Fla. Stat. Id.  Menard claims that counsel decided not to call either Markle or Markham at the hearing or trial because both had asserted their Fifth Amendment rights.  Menard asserts counsel was ineffective because he should have introduced Markle and Markham's prior statements to law enforcement at the stand your ground hearing and trial.  Menard raised this ground as ground five in his Rule 3.850 motion. (Ex. 7 at 3452-53).

Respondent submits the state court properly applied Strickland in denying this ground because the state court found both statements undermined Menard's defense.  Doc. #16 at 24-25. In summarily denying the ground, the post-conviction court held:

> In ground Five Defendant asserts that trial counsel was ineffective for failing to introduce the sworn statements of Phillip Markel and Jacob Markham in lieu of their live testimony at the Defendant's motion to dismiss.  A review of the documents demonstrates that the statements would have undermined the Defendant's claim of immunity. (see attached sworn statements). Specifically, both statements indicate that the reason the Defendant illegally entered Brittany Bay Phase I on January 1, 2010 was to avenge an alleged attack that happened earlier that day.  The statements would have shown that the Defendant illegally entered Brittany Bay

> Phase I while armed in order to provoke a confrontation
> with the victims.  See § 776.041, Florida Statutes, see
> also Darling v. State, 81 So. 3d 574 (Fla. 3d DCA
> 2012)("justification for using deadly force in self-
> defense, which includes the 'stand your ground' defense,
> does not apply to a person who provokes the
> attack.")(citing § 761.041(2), Florida Statutes)).
> Accordingly, Ground Five is denied.

(Ex. 7 at 4870, ¶ 13).  Florida's Second District Court of Appeal's silent affirmance of the post-conviction court's ruling (Ex. 9) is entitled to deference and this Court considers the state postconviction court's reasoned decision denying Petitioner relief.  Wilson, 138 S. Ct. at 1192.

The record reflects both Markle and Markham were unavailable to testify and invoked the Fifth Amendment during their deposition noticed by Menard. (Ex. 7 at 4869-70; 4610-31).  Both Markle and Markham had given post-Miranda statements.  (Ex. 7 at 1440-1475). The statements confirmed that earlier in the day Markle and Markham were at Brittany Bay apartments and encountered Standifer, Fleitas, Morales and Couture, and that Markle was placed in a headlock and had the money from his wallet stolen.  Markle and Markham admitted that they had told Menard about the robbery, and they decided to go back to the Brittany Bay apartments to confront the individuals and get their money back.  Menard drove to the apartment complex and drove directly to the area where they believed the four individuals lived.  Markle claimed an argument broke out and one kid pulled an Uzi so he left but Menard "stayed

there, and I was like Matt let's go, and he's like and he stayed
there posted up, and then the black kid came up pushed him and I
saw Matt reaching and I was like no." Markham and Markle both
claimed they did not know Menard had a gun.  Markle also stated
that after Menard was pushed to the ground he pulled a gun from
his waist and shot.

Statements taken by police in the course of interrogation in
a criminal investigation are considered testimonial evidence and
constitute hearsay.  Crawford v. Washington, 541 U.S. 36, 52
(2004). Menard argues the statements would have been admitted
because they qualify under the hearsay exception for declarations
against interests under Fla. Stat. § 90.804(c)(2).[6]  The state
court did not address the admissibility of the two statements or
make any findings whether either statement was truly self-
inculpatory.  This is a "fact-intensive inquiry." Williamson v.
U.S. 512 U.S. 504, 604 (1994).  Assuming, without deciding that
the testimonial statements were admissible, the record supports

---

[6] *Statement against interest.*--A statement which, at the time of
its making, was so far contrary to the declarant's pecuniary or
proprietary interest or tended to subject the declarant to
liability or to render invalid a claim by the declarant against
another, so that a person in the declarant's position would not
have made the statement unless he or she believed it to be true.
A statement tending to expose the declarant to criminal liability
and offered to exculpate the accused is inadmissible, unless
corroborating circumstances show the trustworthiness of the
statement.

Fla. Stat. Ann. § 90.804 (West).

the state court's findings that counsel was not deficient for not introducing the statements because they would have undermined Menard's defense.  Whether to introduce a witness's testimony is a question of trial strategy.  See Gonzalez v. United States, 553 U.S. 242, 249 (2008) ("Numerous choices affecting the conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial.").  While portions of the statements may have assisted Menard's defense (confirmation that an individual had an Uzi and Menard was pushed), the statements also contained damaging information on the pivotal issue concerning Menard's justifiable use of deadly force.  The state court's finding that there were sufficient strategic reasons for counsel not to introduce the statements is entitled to deference and is not one of those "rarer" situations which merit federal habeas relief.  See Nance v. Warden, Georgia Diagnostic Prison, 922 F.3d 1298, 13031 (11th Cir. 2019).  Thus, Menard cannot satisfy Strickland's performance prong.  See Castillo v. Sec'y, Fla. Dep't of Corr., 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected" [such action] "for strategic or tactical reasons. . . .").

The Court finds Menard has not demonstrated the state court's adjudication of this claim was contrary to clearly established federal law nor based upon an unreasonable determination of the facts.  Ground Six is denied.  28 U.S.C. § 2254(d).

### G. Ground Seven:  Ineffective assistance of counsel for failing to request special jury instruction regarding use of justifiable force.

Menard claims he was justified to use force because he was placed in a position of imminent danger of death or great bodily harm and trial counsel should have requested a special jury instruction on justified force when engaged in unlawful activity. Doc. #1 at 13.

In his Memorandum, Menard "respectfully withdraws Ground 7 from this Court's consideration in light of the Florida Supreme Court's decision in State v. Floyd, 186 So. 3d 1013 (Fla. 2016) and for the reasons cited by the state trial court."  Doc. #4 at 36.  Ground Seven is deemed voluntarily dismissed.

### DENIAL OF CERTIFICATE OF APPEALABLITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must demonstrate that "reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (citations omitted).  Petitioner has not made the requisite showing here and may not have a certificate of appealability on either ground of his Petition.

Accordingly, it is hereby **ORDERED:**

1.   Petitioner's motion to voluntarily dismiss Grounds Five and Seven of the Petition incorporated in his Memorandum (Doc. #4) is **GRANTED** and **Grounds Five and Seven are voluntarily dismissed.**

2.   Petitioner's Writ of Habeas Corpus (Doc. #1) is **DENIED.**

3.   Petitioner is **DENIED a certificate of appealability.**

4.   The **Clerk of Court** shall moot any pending motions, enter judgment and close this case.

**DONE and ORDERED** at Fort Myers, Florida, this ___20th___ day of May, 2020.

_John E. Steele_

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA:  FTMP-1
Copies:
Counsel of Record